WEGMANN et al., Respondents, v. ROTHWELL et al.,
Appellants.

St. Louis Court of Appeals, January 8, 1907.

EVIDENCE: Explanation of Receipts: Weight of Evidence. In an
action to recover a balance due upon certain orders drawn in
favor of plaintiffs upon a fund in the hands of defendants,
certain receipts given by plaintiff acknowledging full payment,
were open to explanation and left the case to be determined
upon the weight of evidence, which determination will not be
disturbed by the appellate court.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel
G. Taylor,* Judge.

AFFIRMED.

*R. Lee Mudd* for appellants.

*Kinealy & Kinealy* for respondents.

The complaints urged by appellants being all based
upon the argument that the jury found against the
weight of the evidence, and the evidence being conflict-
ing, the judgment must be affirmed. Holloway v. Kansas
City, 184 Mo. 19; Veale v. Green, 105 Mo. App. 182.

GOODE, J.—In the summer of 1902, defendants
Richard and James Rothwell were partners doing work
on the St. Louis Belt & Terminal Railway. They had
sublet part of the construction work to B. W. Goiens.
Plaintiffs were partners engaged in the grocery, feed
and provision business in the city of St. Louis. Goiens
needed to purchase groceries, provisions and horse feed
while his work was in progress and applied to plaintiffs
for credit. They investigated his financial standing and
finding it unsatisfactory, refused to extend credit to him.

He proposed to give them orders on defendants, directing the latter to pay plaintiffs for any purchases out of the indebtedness which would accrue in his favor from defendants on account of construction work. Pursuant to this arrangement he executed four orders all of the same date, June 27, 1902, duly signed and acknowledged. Order number one was, except the acknowledgment, as follows:

"St. Louis, June 27, 1902.
"Richard & James Rothwell, City.

"Gentlemen: Please pay to Wegmann Bros. the amount of money that will be due me for work performed by me during the month of June, 1902, under my subcontract for work on Central Belt Railway, for work as per engineer's estimate.

"Yours respectfully,

"B. W. GOIENS."

The other three orders were exactly like the foregoing except that they were for money that would be due Goiens for work performed during the months of July, August and September. According to the testimony of Theodore Wegmann, Goiens had proposed to turn over his pay-roll to plaintiffs. After the foregoing orders had been given, Theodore Wegmann took them to Rothwell Brothers to ascertain if they would be accepted; that is, if Rothwell Brothers would agree to pay plaintiffs the money accruing to Goiens during each of said months. Whatever arrangement there was between plaintiffs and defendants, was made in an interview between Theodore Wegmann and James Rothwell. According to said Wegmann's testimony he proposed to Rothwell that if the latter would accept the orders and agree to pay over the amount of money due Goiens each month, plaintiffs would give credit to Goiens. Theodore Wegmann said James Rothwell agreed to do that, saying he would turn over every cent that fell due each month to Goiens. The testimony for plain-

tiffs is that, pursuant to this arrangement, Goiens was permitted to run an account amounting to $4,774.90, during the months of June, July and part of August, when further credit was refused for a reason which will appear.   About July 15th Rothwell Brothers turned over to plaintiffs $1,011.94 as the sum owing Goiens for work during the month of June, less ten per cent.   It should be stated that defendants had the right to reserve ten per cent of the monthly earnings of Goiens in order to insure faithful performance of his contract. The check given for work done in June, overpaid the account Goiens had run with plaintiffs during that month in the sum of $350, and plaintiffs paid the surplus to Goiens.   The latter's account with plaintiffs in July was $2,872.85.   August 26th Rothwell Brothers turned over to plaintiffs as the balance due Goiens for the month of July, $1,239.50, which left a deficit in the Goiens account for July of $1,633.50.   On the August account plaintiffs were paid $590.96, leaving a balance for that month which, when added to the balance left in July, made a total deficit of $2,245.78.   For this reason no further credit was extended to Goiens.   The present action was brought to recover said balance, on allegations that the payments made by Rothwell Brothers to plaintiffs fell far short of the indebtedness which had accrued to Goiens from defendants for his work.   In other words, that defendants have in their hands money owing to Goiens sufficient to satisfy plaintiff's demand, and which defendants had agreed to pay plaintiffs.   In defense of the action defendants alleged a contract between them and plaintiffs which diverges in important particulars from the one alleged and testified to by plaintiffs.   James Rothwell swore that, instead of agreeing to pay plaintiffs the full amount, less ten per cent, earned by Goiens, according to the engineer's estimate, during each of the four months mentioned, he only agreed to pay the balance due Goiens after discharg-

ing the latter's obligations to his employees for labor and such orders of dates prior to the date of those held by plaintiffs, as Goiens might have given to other merchants for groceries and produce. The evidence for defendants tends to show that, deducting what defendants paid out to employees and on these prior orders, they had paid plaintiffs the full amount left due to Goiens. All the various errors assigned resolve themselves into a contention that the verdict is so manifestly opposed to the evidence that the judgment entered in accordance with it should be reversed. The foregoing statement discloses a conflict between the testimony of Theodore Wegmann and James Rothwell as to the terms of the contract by which defendants agreed to answer to plaintiffs for Goiens' account; and it is not contended that we would have power to disturb the jury's finding on the issue, if the finding was based on said testimony alone. But certain receipts signed by Theodore Wegmann are said to prove conclusively that the contract was as James Rothwell swore. When said Wegmann received checks from Rothwell Brothers, he receipted for them on the ledger of the firm at a page whereon the firm's account with Goiens was kept. On receiving the payment for June which, as stated, was in excess of Goiens' account with plaintiffs for said month, Theodore Wegmann signed a receipt on Rothwell Brothers' ledger showing the order given by Goiens for the month of June had been fully paid. Above the space where he signed was an entry, "By cash advanced and feed orders, $972.32." When Wegmann receipted August 26, 1902, he did so on a page of defendants' ledger containing these entries: "By cash advanced and payments to Furstenfeld & Son, $188.36; Wm. Streete, $180.75; Cash, pay-roll 1st July, $474.00. Balance $1,239.50. Paid in full," etc. The page on which the third receipt was entered appears to contain the following entry; "$590.96 for time checks issued by B. W. Goiens for month of August . . .

all the time checks we have to date. Wegmann Bros."
Theodore Wegmann receipted for the July and August
orders as paid in full, though, in fact, they were only
partly paid. The foregoing circumstances are invoked
as showing beyond doubt, that Theodore Wegmann
understood the arrangement between him and defend-
ants to be that defendants were not to turn over to plain-
tiffs all the money which accrued to Goiens for work
during the four months, but were first to deduct from
what accrued all sums paid on "time-checks" to his men
and all orders given in favor of other merchants, of
prior date to plaintiffs' orders. The entries in favor
of Furstenfeld & Sons and William Streete were for pay-
ments said to have been made by defendants on such
orders given to these dealers by Goiens and the entries
of payments on time-checks related to money paid out
by defendants to Goiens' employees. James Rothwell
swore Theodore Wegmann looked at the pages of the
ledger before signing the receipts, and on this state-
ment, and the fact that Wegmann receipted in full, it
is argued that no room was left for a finding in plain-
tiffs' favor as to the terms of their contract with de-
fendants. One branch of this argument is that by re-
ceipting in full, in sight of said entries, plaintiffs con-
ceded defendants' right to make the payments to other
parties which were shown on the ledger, and acknowl-
edged receiving from defendants the full amounts due
them (plaintiffs) though, in point of fact, those amounts
did not cover plaintiffs' orders from Goiens for July
and August. This reasoning is specious when addressed
to an appellate court, though it would have been sound
enough as an argument to the jury. Theodore Weg-
mann testified he paid no attention to the book and did
not scan it nor the accounts before receipting, as he was
assured by James Rothwell that, though the July and
August payments fell short of the amount of plaintiffs'
orders, there would be ample funds coming to Goiens

121 App—27

later to meet those orders in full; that Rothwell said there was a reserve of ten per cent under defendant's contract with Goiens and a further reserve of ten per cent additional, making twenty per cent reserved out of Goiens' earnings, and that this money would be applicable to the payment of plaintiffs' orders. Theodore Wegmann admitted noticing the payment to Furstenfeld & Sons and said he expostulated with Rothwell about it, and insisted plaintiffs were entitled to be paid all the money going to Goiens; but was reassured by Rothwell. Wegmann further swore that in his first interview with Rothwell, when the question was up of accepting Goiens' orders, Rothwell stated that he would have to pay a few small accounts for which Goiens had already given orders, but there would be enough money left to cover those given to plaintiffs. In view of the foregoing testimony, and more like it, it is plain that we cannot find the contract was as testified to by James Rothwell. The receipts given by Wegmann are not conclusive, but open to explanation; and if Theodore Wegmann's testimony is believed were thoroughly explained. [Riley v. Kersham, 52 Mo. 224; Bigbee v. Coombs, 64 Mo. 529.]

Defendants' counsel makes a computation in his brief intended to show that no verdict in favor of plaintiffs in excess of $916.30 was possible under the evidence. But this conclusion is reached by assuming that defendants were justified in paying, out of what they owed Goiens each month, time-checks and prior orders to other dealers than plaintiffs. This is assuming the very point in issue. If, as plaintiffs' testimony and the written orders go to prove, defendants agreed to turn over to plaintiffs Goiens' earnings each month, less ten per cent, defendants had no right to pay other persons out of the earnings; or, at least, were bound to answer to plaintiffs for the amount earned by Goiens, as plaintiffs had given him credit relying on a promise to do so.

We have gone into the testimony in this case with

some detail, because the points made for reversal propound the theory that the verdict was inconsistent, not only with the weight of the evidence, but with any fair deduction from it. In our judgment the questions involved relate exclusively to the weight of the evidence. Therefore the judgment will be affirmed. All concur.